IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01831-MEH

MICHAEL L. MACGOWAN, JR.,

      Plaintiff,

v.

TOWN OF CASTLE ROCK, COLORADO,

      Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Plaintiff, proceeding pro se, initiated this action on June 4, 2019, asserting seven claims against Defendant Town of Castle Rock, Colorado, ("Castle Rock" or "the Town") related to Defendant's denial of Plaintiff's application for variances from of the Town's zoning code regulating signs. Compl. ¶ 1, ECF 2. In response, Defendant filed the present Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing Plaintiff fails to state plausible claims for relief (ECF 11). For the reasons that follow, the Court grants Defendant's[1] Motion in part and denies it in part as moot.

## STATEMENT OF FACTS

      The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in his Complaint and attached

---

[1] The present Motion was filed by Defendants Town of Castle Rock and Paul Donahue. Mr. Donahue has since been dismissed from this suit with prejudice. *See* Unopposed Forthwith Mot. to Dismiss Former Mayor Paul Donahue, ECF 13, and Min. Ord., ECF 15.

exhibits, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Combolisk" is a trademark and tradename for Plaintiff's business which seeks to build a self-regulated network of "outdoor free speech structures" called Combolisks. A Combolisk is a large obelisk or obelisk-like structure "designed to broadcast digital messages along thoroughfares in the tradition of the outdoor billboard." A Combolisk would display a rotating mix of for-profit, sponsored, or commercial broadcasts with a required, minimum number of nonprofit broadcasts. The Combolisk organization believes, among other things, that "the right to Obelisks predates the civilizations based upon the common law upon which our country and its predecessors are based," and that Combolisks "transcend old zoning concepts and use[] the Obelisk as a base to the inherent right in the real property."

Generally, the Combolisk organization's plan is to create a single, for-profit Combolisk, then use the profits to form an overseeing nonprofit organization to manage all future Combolisks. To that end, in 2017, Plaintiff submitted a Sign-Permit Application to Defendant, which he requested be suspended on October 3, 2017. In 2018, Plaintiff submitted another application to Defendant to "install free standing off[-]premise billboard" at a car wash next to a major interstate highway in Castle Rock, Colorado. During initial discussions about the project, Castle Rock Zoning Manager Tammy King indicated to Plaintiff the project would require variances based on the proposed (1) overall size, (2) height, and (3) relative size of the sign given the size of the car wash lot. She did not mention the need for a variance for the sign's off-premises[2] use. After notice

_____

[2] "Off-premises sign means any sign which serves to communicate information about a business, product, service or activity not conducted, sold or offered on the premises on which the sign is located. A sign located in public or private rights-of-way adjacent to the premises where the

was given about a hearing on Plaintiff's application, the need for the fourth variance—for off-premises use—was noted. Plaintiff's hearing was then delayed to accommodate including the fourth variance in Plaintiff's application. On May 2, 2019, Defendant's Board of Adjustment ("BOA") held a public hearing at which it denied all four of Plaintiff's variance requests. The BOA's denial at the hearing was a final decision on the application.

## LEGAL STANDARDS

### I. Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) (recognizing federal courts are courts of limited jurisdiction and "there is a presumption against our jurisdiction"). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). A motion to dismiss under Rule 12(b) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). Accordingly, Plaintiff bears the burden in this case of establishing that this Court has jurisdiction to hear his claims.

---

business, product, service or activity is located is an off-premises sign." CASTLE ROCK, COLO., MUNICIPAL CODE § 19.04.022 (2019).

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002–03 (citations omitted); *see also Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015).

## II.     Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

### III.    Treatment of a Pro Se Plaintiff's Complaint

The Supreme Court has directed courts to hold pro se litigants' pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Tatten v. City & Cty. of Denver*, 730 F. App'x 620, 623 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 826, 202 L. Ed. 2d 579 (2019) (quoting

*Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Tenth Circuit interpreted the *Haines* rule to mean "that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so." *Id.* (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991)). "This liberal-construction rule does not, however, relieve a pro se plaintiff of his burden to present sufficient facts to state a legally cognizable claim, nor will the court act as his advocate and make his arguments for him." *Id.* at 624. Accordingly, the court must "not supply additional facts, nor...construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). In addition, the Tenth Circuit instructs that courts must "hold pro se litigants to the requirements of the Federal Rules." *Clark v. Time, Inc.*, 727 F. App'x 975, 978 (10th Cir. 2018).

## ANALYSIS

Plaintiffs' Complaint asserts seven claims for relief based on Defendant's alleged unlawful conduct.[3] Plaintiff alleges constitutional claims based on the alleged violation of his (1) Fourteenth Amendment right to due process; (2) Fourteenth Amendment right to equal protection; (3) First Amendment right to free speech; and (4) First Amendment right to assembly. Plaintiff further asserts claims for (5) "abuse of power," (6) "just compensation," and (7) "discrimination." Compl. ¶¶ 7-48. Defendant moves to dismiss the entirety of the Complaint for failing to state a claim under Fed. R. Civ. P. 12(b)(6). Mot. to Dismiss 2, ECF 11.

---

[3] The Court understands Plaintiff to allege these claims pursuant to 42 U.S.C. § 1983, although he does not mention the statute.

## I. Fourteenth Amendment Due Process

Plaintiff first claims that he was denied due process in his variance application because (1) he never received a final, appealable order on his first application; (2) Ms. King did not mention he would need a variance for off-premises use during discussions about the project; and (3) he "was forced to have a variance hearing in order to receive a final appealable order" on his second application. Compl. ¶¶ 7-10. In the Motion to Dismiss, Defendant argues that no order was issued on the first application because Plaintiff requested the Town "suspend" it. Mot. 4; *see* ECF 10-1 at 2. Plaintiff concedes his "removal of the [first] permit application," Resp. 3; therefore, this part of the first claim is deemed withdrawn.

Defendant generally argues Plaintiff fails to state a viable due process claim because "a due process violation ordinarily alleges the lack of notice and a hearing, not the presence of such safeguards." Mot. 3. In response, Plaintiff argues he "repeatedly asked for a final order and was only given the opportunity to have a variance hearing," Resp. 2, ECF 18, and Defendant did not mention any issue with the off-premises use of his project until after his application had been reviewed and notice of a hearing made. *Id*. at 3. Defendant replies that Plaintiff's attachment to his complaint "provide[s] unequivocal proof" that the Town held a public hearing on all four of Plaintiff's requested variances, including one for off-premises use, and that Plaintiff has failed to articulate why that hearing was insufficient. Reply 2, ECF 19.

Although the parties focus their attention on the public hearing conducted on Plaintiff's application, both fail to address what—if any—liberty or property interest is implicated in this case. A plaintiff asserting a procedural[4] due process violation must show that he or she "possesses

---

[4] The Court construes the Complaint liberally as asserting a procedural due process claim.

a constitutionally *cognizable liberty or property interest*" and was deprived of that interest without due process of law. *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1199 (10th Cir. 2010) (emphasis added). To satisfy this requirement, a plaintiff "must demonstrate a legitimate claim of entitlement to the asserted interest which may arise either from the Due Process Clause itself or state law." *Id.* The state law must direct "that 'a particular outcome must follow' if certain predicates are met." *Doyle v. Okla. Bar Ass'n,* 998 F.2d 1559, 1570 (10th Cir. 1993) (quoting *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 463 (1989)). The "mere expectation of receiving a state afforded process does not itself create an independent liberty interest protected by the Due Process Clause." *Id.* at 1569. Where the state statute creates a mandatory procedure but does not guarantee a particular substantive outcome, no protected liberty interest exists. *Pierce v. Delta Cty. Dep't of Soc. Servs.*, 119 F. Supp. 2d 1139, 1153 (D. Colo. 2000) (citations omitted).

In this case, Plaintiff fails to allege any cognizable interest at stake which would implicate the Due Process Clause. Plaintiff applied for variances from Defendant's zoning code. Defendant's code uses permissive, rather than mandatory, language in discussing the issuance of variances. *See* Castle Rock, Colo., Municipal Code § 19.04.080(G) and (H) (2019) ("In determining *whether or not* a variance should be granted . . ." and "[a] variance *may be granted* subject to such reasonable conditions applicable to the sign . . . ." (emphases added)). There is no law directing that he must receive those variances if certain predicates are met and, thus, no guaranteed, substantive outcome. Therefore, the only expectation Plaintiff could have was that his variance application would be assessed by Defendant's BOA. The expectation of this process, in itself, is not an independent interest protected by the Due Process Clause. In any event, Plaintiff received all the procedure he was due in the opportunity to be heard at a hearing in front of the BOA. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due

process is the opportunity to be heard at a meaningful time and in a meaningful manner."). Accordingly, taking the facts alleged as true, Plaintiff fails to state a plausible claim for violation of his procedural due process rights, and the first claim is dismissed.

## II.     Fourteenth Amendment Equal Protection

Plaintiff's second claim, for violation of the Fourteenth Amendment's Equal Protection Clause, consists of several different complaints related to the Town's prohibition of off-premises signs. Plaintiff first takes issue with the process for enforcing the prohibition claiming, "there is no method for determining whether an application complies with the [on premises] nature of the application until a complaint is made. This implies that there is no equal protection for citizens regarding the nature of on and/or off premise use." Compl. ¶ 12. Plaintiff next complains that "Defendant cannot deny an application for off[-]premise use and then use off[-]premise advertising on its own sign." *Id*. at ¶ 13. This is in reference to a photograph included in Plaintiff's sworn affidavit attached to the Complaint, ECF 10-2 at 2, showing a sign outside Castle Rock City Hall displaying icons for various social media platforms, such as Facebook. In the final portion of the claim, Plaintiff states that "[a] strict interpretation of a prohibitive ordinance, like Defendant's code, would recognize that even cell phones are illegal without a permit," and "televisions [] inside the home" are "no different from a commercial billboard" such that "[t]he city cannot ignore the issues with off[-]premise permanent structures in homes . . . without equally allowing a permit for an off[-]premise billboard." *Id*. at ¶¶ 14-15. The Court construes Plaintiff's claim as alleging Defendant unlawfully treated him differently than (1) itself and (2) individuals with cell phones and personal televisions.

Defendant moves to dismiss Plaintiff's claim because Plaintiff does not allege he was treated differently than other similarly situated individuals under the Town's code. Defendant

argues it did not violate its own off-premises prohibition, because the social media icons on its sign do not promote those social media companies but rather indicate platforms where citizens can communicate with the Town. Defendant continues that Plaintiff's "thirty-five-foot Combolisk is not materially situated to individuals with cell phones and personal televisions" such that he fails to state a claim he was treated differently without justification. In his response, Plaintiff simply reiterates his complaints of perceived differential treatment given to the Town and individuals with personal electronics. He argues that because "every Smartphone and mounted television device in town are illegal," he "should be allowed to have an unlawful use like everyone else," Resp. at 3-4, and that if Defendant can "broadcast social media commercial companies," "then the variance hearing should have voted in favor of the off-premise use" of his Combolisk. *Id.* at 4.[5]

The Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike." *Plyer v. Doe*, 457 U.S. 202, 216 (1982). While "traditional" equal protection doctrine focuses on discrimination between classes or groups of persons, the "class of one" doctrine focuses on discrimination against a specific individual. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also SECYS, LLC v. Vigil*, 666 F.3d 678, 685-689 (10th Cir. 2012) (discussing both "traditional" class-based and "class of one" equal protection analyses).

---

[5] In his Response, Plaintiff also complains that the city allowed a digital billboard for an outlet mall near the proposed location of the Combolisk. He argues that allowing a billboard-sized display for the "builder with deep pockets" "is a[n] unfair practice discriminating against the local mom and pop businesses . . . ." Resp. 4-5. Because Plaintiff makes this allegation for the first time in his Response, the Court does not consider it in evaluating his claim. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (holding that a court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint) (citation omitted); *see also Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1107 (7th Cir. 1984) (holding that "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (citation omitted) and *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015).

Plaintiff in this case does not assert he is a member of a class or group subject to discriminatory state action; therefore, the Court construes his claim as a "class of one" equal protection claim.

To assert an equal protection claim, "[f]irst, the class of one plaintiff must show he or she (as opposed to a class in which he is a member) was 'intentionally treated differently from others similarly situated.'" *SECYS, LLC*, 666 F.3d at 688 (quoting *Olech*, 528 U.S. at 564). "Second, when intentional discrimination is shown to exist the plaintiff must prove there is no 'rational basis' for it." *Id.* at 689. Class of one jurisprudence reflects a wariness of "turning even quotidian exercises of government discretion into constitutional causes," with these concerns magnified in the context of "challenges to low-level government decision-making, which often involves a great deal of discretion." *Kan. Penn Gaming, LLC*, 656 F.3d at 1216 (quotation omitted). Relying on these concerns, the Tenth Circuit has recognized there is a "substantial burden" on plaintiffs to demonstrate others "similarly situated in all material respects" were treated differently. *Id.* at 1217.

In this case, the Court understands Plaintiff to assert an equal protection claim based on allegations that both (1) Defendant and (2) individuals with cellphones or personal television were permitted to engage in off-premises advertising, while he is prohibited from doing so. However, Plaintiff fails to plausibly allege that either Defendant or individuals with personal electronics are similarly situated to him in all material respects.

First, although Plaintiff alleges Defendant is engaging in off-premises advertising by displaying social media icons on its City Hall sign, as Defendant explains, this sign does not advertise for those social media companies; rather, it communicates to citizens the social media platforms where they can engage with Defendant. The off-premises prohibition would not prevent Plaintiff from putting up a sign on the car wash property indicating the social media platforms, if

any, where customers could engage with the car wash. Therefore, Plaintiff fails to plausibly state that Defendant was treated differently than Plaintiff in terms of the off-premises prohibition.

Second, Plaintiff makes no plausible claim that he is similarly situated to individuals with personal electronics. Plaintiff wishes to construct a thirty-plus foot tall obelisk structure. This large, permanent structure is not materially situated to handheld cellular phones or television sets within people's homes. Taking all facts alleged as true, Plaintiff fails to state a plausible claim Defendant treated him differently than similarly situated individuals. Therefore, Plaintiff fails to state an Equal Protection claim, and the second claim is dismissed.

## III.   First Amendment Free Speech

Plaintiff's next claim is somewhat difficult to discern, with allegations sprinkled amongst a sizeable narrative on the nature and benefits of the Combolisk project. From what the Court can piece together, Plaintiff is claiming Defendant's "municipal code" is invalid under the Supreme Court's decision in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981), because "a permanent structure of the size and stature of a billboard must be allowed by Metromedia precedent." Compl. ¶¶ 16, 24 (italics omitted in original). Defendant also explicitly contends "the court must overturn Castle Rock and declare its ordinance unlawful because it does not provide a method for obtaining a permit for a Combolisk, denied a variance for a Combolisk, and discriminates against . . . artwork that would be broadcast from a Combolisk." *Id.* ¶ 21.

Defendant moves to dismiss Plaintiff's claim, arguing Defendant's code is constitutional under *Metromedia* and *Central Hudson Gas Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). It continues that, in addition to the off-premises use, Plaintiff's Combolisk application was denied due to its height and size, restrictions which Plaintiff does not allege are invalid under the First Amendment. Plaintiff's Response does little to clarify the nature

of his claim. He states, "[t]he previous *Metromedia* requirement provides for at least some standard billboards in a zoning jurisdiction due to the ability of non-profits to purchase advertising space," Resp. 5, and "[b]y the *Metromedia* standard, it would seem apparent the town's sign code is unconstitutional by not providing a display face, which is of 'readable' form as orientated to the adjacent traffic flow," *id*. at 6. Plaintiff also declares, "[i]t is within Plaintiff's life, liberty, and the pursuit of happiness to have at least one Combolisk." *Id*.

Even liberally construing the Complaint in Plaintiff's favor, Plaintiff fails to state a coherent claim for a violation of the First Amendment. Importantly, Plaintiff never identifies what provision or provisions of Defendant's zoning code are allegedly unconstitutional. He generally refers to Defendant's "municipal code" and "ordinance" or "sign code." Without identifying exactly what Plaintiff is challenging, the Court finds it difficult to determine the legal basis of Plaintiff's argument. Although he continuously mentions *Metromedia* and a few other Supreme Court cases, Plaintiff does not apply the precedent to any individual provision. He does little more than make general pronouncements that Defendant's code is unconstitutional. While it is true a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than pleadings drafted by lawyers, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall*, 935 F.2d at 1110 (citations omitted). For that reason, the court will "not supply additional facts, nor . . . construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Peterson*, 149 F.3d at 1143. The Court will not comb through the entirety of Defendant's sign code and try to formulate possible constitutional challenges to each provision on Plaintiff's behalf. Doing so would cross the line from liberally construing Plaintiff's claim into supplying a legal theory and supporting facts for the Plaintiff. Accordingly,

Plaintiff fails to state a plausible claim Defendant violated the First Amendment and the third claim is dismissed.

## IV.    First Amendment Right to Assembly

Plaintiff's fourth claim for relief alleges Defendant's zoning ordinance violated his First Amendment right to "assembly for speech" by limiting sign size to forty square feet.   Plaintiff claims signs compliant with the ordinance are not readable by vehicles traveling on the highway and, therefore, the ordinance does not "allow[] for a community of people to assemble and pass by a location to view words or pictures as speech at highway speeds.  This results in [the] right to assembly being denied."  Compl. ¶¶ 29, 30.

Defendant moves to dismiss Claim Four because Plaintiff has not alleged particular individuals have been denied the right to assemble in a public place or that any person has been denied the right to assemble for the purposed of engaging in protected speech.  Mot. 9.  Defendant continues that the "association" of random individuals driving on a highway viewing commercial speech is not an association protected under the First Amendment.  *Id*.  Plaintiff responds that "[t]he right to assemble is through the communication of broadcasts to travelers," Resp. 7, to which Defendant replies that the First Amendment right to assemble is not implicated by allegations of an inability to assemble random individuals for "chance encounters."  Reply 7.

The First Amendment explicitly protects the freedom to peacefully assembly and implicitly protects the freedom to expressive association in order to pursue its other, explicitly mentioned, rights.  U.S. Const. amend. I;  *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984) ("An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed.").  The right of

association and the right of assembly protect an individual's ability to join with others or engage in group effort for a common purpose. *See, e.g.*, *Jaycees*, 468 U.S. 622 (1984) (the implicit freedom to association affords "protection to collective effort on behalf of shared goals."), *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 678 (2000) (finding "when the State interferes with individuals' selection of those with whom they wish to join in a common endeavor, freedom of association . . . may be implicated."), and *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460-61 (1958) (protecting the ability of NAACP "members to pursue their collective effort to foster beliefs.").

The Court finds no support for Plaintiff's tacit assertion that individuals "assemble," as the term is used in the First Amendment context, as they separately travel in discrete motor vehicles along highways. *See Assemble*, BLACK'S LAW DICTIONARY (6th ed. 1990) (defining "assemble" as: "The concourse or meeting together of a considerable number of persons at the same place."); *see also Assembly, right of*, BLACK'S LAW DICTIONARY (6th ed. 1990) (defining "right of assembly" as: "Right guaranteed by First Amendment, U.S. Constitution, allowing people to meet for any purpose connected with government.") and *Association*, BLACK'S LAW DICTIONARY (6th ed. 1990) (defining "association" as: "The act of a number of persons in uniting together for some special purpose or business."). The freedom of expressive association protects the collective interests of a group whose members share common interests or objectives. Random strangers traveling separately along a highway are not coming together to pursue a shared goal or common purpose. They all pass by the same locations by chance, simply because of their use of the same highway for travel. The First Amendment's rights to free assembly and free association are not concerned with a generalized right of "social association" that includes chance encounters, *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989), let alone individuals who have no interaction or

encounters whatsoever. Therefore, Plaintiff's claim, about a "community" of people "assembled" passing by a location at highway speeds fails to plausibly allege a violation of the First Amendment rights to assembly or association, and his fourth claim is dismissed.

## V.     "Just Compensation"

Plaintiff's "just compensation" claim argues that if the government uses aesthetic beauty as a justification for regulating or prohibiting billboards, individuals who have a property interest near a highway should be compensated for the lost opportunity of not being able to erect a Combolisk. Compl. ¶ 40 ("If the public deems it necessary to create aesthetic beauty to promote regions with no or controlled speech, then it must be willing to pay landowners and leasehold interests for the value of the lost opportunity.") and ¶ 45 ("If the city denies a permit for [a Combolisk's] use, the court should enter a judgement [sic] for the lost value to the real property."). The Court construes this claim as alleging a violation of the Takings Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment. *See Chicago, B. & Q. R. Co. v. Chicago,* 166 U.S. 226 (1897).

Defendant moves for dismissal of Plaintiff's "just compensation" claim for two reasons: first, Plaintiff has made no allegations he actually owns the property where he intended to build the Combolisk, and so he lacks standing to assert a taking's claim; and second, that Plaintiff failed to allege the property in question was either physically appropriated or denied all economically beneficial use through regulatory action, and so he fails to state a takings claim. Mot. 10-11. Plaintiff responds that he holds a leaseholder interest in the car wash where he sought to build the Combolisk. He adds, "as the base of the Combolisk is the Greek Obelisks, which predate even the concept of zoning, the belief is that Obelisks and now Combolisks are [an] inherent right to real property." Resp. 9. Defendant replies that Plaintiff failed to include the allegation he held a lease

in the car wash property in the Complaint and, thus, it is improperly included in his response.  Even considering the leasehold, Defendant reiterates that Plaintiff failed to allege Defendant physically appropriated the interest or deprived it of all economically beneficial use.  Reply 8.

The Court disagrees with Defendant that the first time Plaintiff alleged he has a leasehold interest in the car wash property was in his Response to the Motion to Dismiss.  A district court may consider documents attached to or referenced in a complaint on a motion to dismiss for failure to state a claim if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017); *see Hall*, 935 F.2d at 1112 (written documents attached to the complaint are exhibits and are considered part of the complaint for consideration in a rule 12(b)(6) dismissal). Plaintiff attached several documents to his complaint filed in Colorado state court, one of which was his 2018 application for a sign permit to build the Combolisk at the car wash property. Original Sign Application, ECF 10-1 at 8.  Plaintiff explicitly references this application in his Complaint and his claims all arise out of the denial of this application.  *See, e.g.,* Compl. ¶ 1 ("Plaintiff comes . . . to remand an application for a 'Combolisk' . . . .  The original application (attached), for a free standing off-premises billboard upon which a building permit was denied . . . .").  Under "Title or interest in property and building" on the application form, Plaintiff checked "Lessee."  Original Sign Application.  Taking all reasonable inferences in favor of Plaintiff, this application asserts Plaintiff has a leasehold interest in the car wash property as part of his Complaint.  A lease is "property" within the meaning of the Fifth Amendment. *U.S. v. Petty Motor Co.,* 147 F.2d 912 (10th Cir. 1945).

The Takings Clause of the Fifth Amendment prohibits private property "be[ing] taken for public use, without just compensation."  U.S. Const. amend. V.  A regulatory act constitutes

a taking if it is a *per se* taking, i.e., a permanent physical invasion of one's property or a complete deprivation of all economically beneficial use of one's property; or "a taking as characterized by the standards set forth in *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)." *Ramsey Winch Inc. v. Henry*, 555 F.3d 1199, 1208 (10th Cir. 2009) (discussing *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538, 546-48 (2005)).

In this case, Plaintiff does not assert a physical invasion or appropriation of his leasehold nor a complete deprivation of all economically beneficial uses of the property interest. Although Plaintiff is entirely focused on his inability to construct a Combolisk, there are numerous other, economically beneficial, uses he can make out of the property, including, as Defendant notes, putting up a sign compliant with the Town's sign code. Therefore, to state a plausible claim for a taking, Plaintiff's allegations must follow the factors outlined in *Penn Central*.

Under *Penn Central*, the factors a Court considers include the economic impact on the property owner, the interference with a "distinct investment-backed expectation," and the character of the government's invasion. *Penn. Cent. Transp. Co.*, 438 U.S. at 124. First, the Complaint fails to mention Plaintiff's economic impact, if any, because of the variance denial. As to the second factor, although the Complaint implies Plaintiff's expectation for the lease was to construct a Combolisk, it does not allege any investments or expenditures backing this expectation. The third *Penn Central* factor, the nature of the government action, reflects the idea that "[a] 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government . . . than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Id.* (citation omitted). The government action in this case was a zoning decision by Defendant's BOA. In *Penn Central* the Supreme Court noted that "[z]oning laws are, of course, the classic example" of instances it has

upheld land use regulations that adversely affected real property interests because lower courts could reasonably conclude "the health, safety, morals, or general welfare would be promoted by prohibiting particular contemplated uses of land." *Id*. at 125. Even taking the facts alleged as true and reasonable inferences in Plaintiff's favor, the Court finds Plaintiff fails to plausibly allege Defendant committed an unconstitutional taking under the *Penn Central* factors. Therefore, Plaintiff's sixth claim for "just compensation" is dismissed.

## VI.    "Discrimination"

Plaintiff's next claim alleges Defendant discriminates against "[t]he aged and those with visual challenges" because of its sign size and height restrictions. Compl. at ¶ 46. Defendant makes two arguments for dismissal of this claim. First, Defendant argues Plaintiff lacks standing to pursue a discrimination claim because he does not allege he falls into either group. Mot. 11. Second, Defendant argues that even if Plaintiff had standing, he fails to identify the law Defendant is purportedly violating and, thus, the claim fails to satisfy the pleading standard set out in *Iqbal*, 556 U.S. at 662. Plaintiff responds, "it is unreasonable to restrict signage orientated to the interstate to sizes that are not readable for all citizens." Resp. 10. He continues, because "every real property is capable of having a Combolisk . . . a ban on Combolisks discriminates against every citizen of the United States." *Id*. at 11.

Standing is a threshold requirement, and without it, the Court lacks jurisdiction. *Summers v. Earth Island Inst.,* 555 U.S. 488, 492-93 (2009). To have standing, a plaintiff must have "alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal court jurisdiction." *Id.* at 493 (internal quotations omitted) (emphasis in original). "The Supreme Court's standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies

judicially self-imposed limits on the exercise of federal jurisdiction." *The Wilderness Soc'y v. Kane Cnty.,* 632 F.3d 1162, 1168 (10th Cir. 2011) (en banc) (quotations omitted).

To establish standing under Article III, the plaintiff "must have suffered an injury in fact— an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). The plaintiff must also show "a causal connection between the injury and the conduct complained of," and a likelihood that the injury will be "redressed by a favorable decision." *Id.* For prudential standing, a plaintiff must have: (1) a specific grievance as opposed to a general injury shared by a large class of citizens; (2) assert its own rights rather than those of third parties; and, (3) have a complaint that falls within the zone of interest defined by the constitutional or statutory provision at issue. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 474–75 (1982). The plaintiff, as the party asserting jurisdiction, bears the burden of showing that he has standing. *Id.*; *Utah Ass'n of Counties v. Bush,* 455 F.3d 1094, 1100 (10th Cir. 2006).

In this case, Plaintiff alleges Defendant's sign size and height restrictions discriminate against "the aged and those with visual challenges" because, by Plaintiff's estimations, the restrictions cause "signage orientated to the interstate" to be unreadable for those individuals. This assertion fails to support a finding that Plaintiff suffered an injury in fact, let alone one that was concrete, particularized, and actual or imminent, necessary to satisfy the first element of Article III standing. Plaintiff does not allege he, himself, suffered any cognizable injury based on the signage size restrictions in Castle Rock. For the same reason, Plaintiff's allegations also fail to establish a specific grievance as required for the first element of prudential standing. Further, because Plaintiff does not allege he is either "aged" or has "visual challenges," Plaintiff is

attempting to assert the rights of third parties, in direct opposition to the second element of prudential standing. Accordingly, the Court finds that Plaintiff's allegations, taken as true, do not establish the first elements required for Article III and prudential standing nor the second element of prudential standing. Therefore, Plaintiff lacks standing to bring his "Discrimination" claim as pleaded, and the Court dismisses the claim for lack of jurisdiction.

## VII.   "Abuse of Power"

Lastly[6], Plaintiff's alleges the Town acted unlawfully and committed an "abuse of power" when it denied the variances required for the Combolisk and did not offer to modify the zoning code. Compl. ¶¶ 36, 38. Plaintiff claims Defendant "should have acted to find a way to help rather than hinder the project." *Id*. at ¶ 36. Plaintiff further asserts that, "[t]he uniform building code is sufficient for authorities to prosecute sign operators for installing and maintaining substandard structures. Further hinderance to free speech is . . . abuse of power." *Id*. at ¶ 37.

Defendant moves to dismiss Plaintiff's claim because it "is not one recognized under state or federal law." Mot. 9. Defendant continues that, if the Court were to construe Plaintiff's claim as asserting an "abuse of process" claim, Plaintiff fails to allege the "ulterior or improper purpose" element of that claim and any claim asserted under state law would be barred by the Colorado Governmental Immunity Act ("CGIA"). Adopting Defendant's characterization of the claim as one for "abuse of process," Plaintiff provides a two-sentence response:

> If the abuse of process issue is dropped, it serves to remind the court of the tremendous burden placed on free speech. How can it be free, if the people entrusted with preserving free speech do not look for every opportunity to exercise the rights under the [C]onsitution . . . ?"

Resp. 8.

---

[6] Although Plaintiff asserts "abuse of power" as his fifth claim, because the Court construes the claim as asserting a state tort claim, the Court analyzes this claim last to consider pendent jurisdiction.

Given Plaintiff's adoption of Defendant's characterization, the Court construes the claim as asserting abuse of process. Abuse of process is a tort recognized under Colorado law. *See Hewitt v. Rice*, 154 P.3d 408, 413-14 (Colo. 2007). As neither party has alleged that the Court has diversity jurisdiction over this case, the Court may review Plaintiff's state law claim only if it would be proper to exercise pendent supplemental jurisdiction.

A district court has discretion to exercise pendent jurisdiction over a claim when it "has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). In exercising its discretion, a district court should consider "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims . . . ." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Absent a showing that the parties have expended a great deal of time and energy, "a district court should normally dismiss supplemental state law claims after all federal claims have been dismissed." *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002); *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) ("[T]he most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice . . . .").

Based on these principles, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for abuse of process. The Court stayed discovery in this matter on July 31, 2019. Courtroom Min. Ord., ECF 17. Therefore, it is clear the parties have not expended a great deal of time and energy. Furthermore, if Plaintiff were to reassert this claim in state court, the parties would not be required to repeat any discovery. A balance of the

factors in this case does not favor retaining jurisdiction over the remaining state law claim. As such, the Court dismisses Plaintiff's fifth claim for relief, titled "abuse of power," as to Defendant Town of Castle Rock without prejudice.

## CONCLUSION

Defendant's Motion to Dismiss was filed on behalf of Defendant Town of Castle Rock, Colorado and former Defendant Paul Donahue. Because Mr. Donahue has since been dismissed from this matter with prejudice, the portions of the present Motion related to Mr. Donahue are moot. As to Plaintiff's seven claims against the remaining Defendant, Castle Rock, the Court lacks jurisdiction to hear Plaintiff's "abuse of power" and "discrimination" claims. As examined above, Plaintiff's other five claims fail to plausibly state that Defendant violated the First, Fifth, or Fourteenth Amendments. For the foregoing reasons, Defendant's Motion to Dismiss [filed July 15, 2019; ECF 11] is **granted in part** as to claims alleged against Defendant Town of Castle Rock, Colorado, and **denied in part as moot** as to claims against Mr. Donahue. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated this the 10th day of January, 2020, in Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge